IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**LEROY TOWNSEND,**

 **Plaintiff,**

v.                Civil Action No. 1:16cv180
                   (Judge Keeley)

**ANGELA GYORKO, Case Manager;
LORI SMITH, Unit Manager; JAMES
FAHEY, Case Manager; and JAMES
DUNN, Associate Warden,**

 **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

On August 31, 2016, the *pro se* Plaintiff, an inmate then-incarcerated at FCI Hazelton[1] in Bruceton Mills, West Virginia, initiated this case by filing a <u>Bivens</u>[2] civil rights complaint against the above-named defendants, along with a motion to proceed as a pauper and supporting documents. ECF Nos. 1, 2, 3, & 4. On September 6, 2016, the Plaintiff was granted permission to proceed as a pauper but directed to pay an initial partial filing fee. ECF No. 6. Plaintiff paid the requisite fee on October 3, 2016. ECF No. 9.

On October 4, 2016, Magistrate Judge James E. Seibert conducted a preliminary review of the file, determined that summary dismissal was not appropriate, and directed the United States Marshal Service to serve the complaint. Accordingly, an order to answer was entered. ECF No. 10. On November 29, 2016, the Defendants moved for a consolidated response date. ECF No. 19. By Order entered the following day, Defendants' motion was granted. ECF No. 20.

---

[1] The docket reflect that Plaintiff is currently incarcerated at USP Leavenworth, in Leavenworth, Kansas.

[2] <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

On December 9, 2016, Plaintiff objected to the Order granting the consolidated response date. ECF No. 22.  On January 20, 2017, the Defendants moved for an extension of time. ECF No. 27. By Order entered January 24, 2017, the Defendants were granted the extension.  ECF No. 28. On February 10, 2017, the Defendants filed a Motion to Substitute Party and Clarify Electronic Docket. ECF No. 31.  By Order entered the same day, the Defendants' motion was granted and the docket corrected to reflect the full names of the substituted parties. ECF No. 32.

On March 1, 2017, the Defendants filed a Motion to Dismiss or Alternatively, Motion for Summary Judgment, along with a memorandum in support, attaching numerous affidavits.  ECF Nos. 34 & 35.  On March 15, 2017, because Plaintiff was proceeding *pro se,* the Court issued a Roseboro Notice.  ECF No. 38.  On March 20, 2017, Plaintiff filed his response in opposition, styled as Motion for Summary Judgment. ECF No. 39.

By Order entered on September 15, 2017, this case was reassigned from Magistrate Judge James E. Seibert to the undersigned.  On January 16, 2018, an Order to seal Plaintiff's response to Defendants' dispositive motion was entered. ECF No. 45.

This case is before the undersigned for a Report and Recommendation ("R&R") on Defendant's dispositive motion.

## II. Contentions of the Parties

### A. The Complaint

In his complaint, Plaintiff raises claims of falsified records containing a false detainer, racism, and retaliation, alleging that his Case Manager, Defendant Angela Gyorko ("Gyorko") lodged a non-existent detainer against him and then cursed at him when he protested and issued him 4 misconducts.  ECF No. 1 at 7. Plaintiff contends that his Unit Manager, Defendant Lori Smith ("Smith") defended Gyorko's placement of the detainer, thereby supporting the placement

of false statements into Plaintiff's central file, although Smith did throw out two of the misconducts. Id. at 8. Further, Plaintiff contends that FCI Hazelton's Associate Warden, Defendant James Dunn ("Dunn") opposed his November 2015 application into a faith-based religious program, Life Connections Program out of racism, compelling Plaintiff to exhaust the administrative remedy process. Id. Finally, Plaintiff contends that Defendant James Fahey ("Fahey") falsely claimed that Plaintiff had pending charges in his PSI, in order to corroborate Gyorko's false statements. Id. at 7 – 8. Plaintiff alleges that all of these acts were done with the detrimental and malicious purpose of impeding his inmate programming; raising his institutional point score to prevent his transfer to institutions with better educational and vocational opportunities; and/or to prevent his entry into RDAP and a halfway house. Id. at 9.

The Plaintiff maintains that he has filed a BP-8, a BP-9, and a BP-10 to exhaust his administrative remedies with regard to his claims. Id. at 4 – 5 and ECF 1-1 at 3 – 7. Elsewhere, he contends he also filed a BP-11. ECF No. 1 at 6.

As relief, he requests $100,000.00 per defendant per violation of false and fraudulent statements and deprivation of due process for a total amount of $800,000.00." Further, he requests a "transfer within my region." Id. at 9.

**B. Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment**

Defendants argue that the complaint should be dismissed or summary judgment be granted in their favor because:

1) Plaintiff failed to exhaust his administrative remedies before filing suit. ECF No. 35 at 9 – 11.

2) Even if Plaintiff had administratively exhausted his claims, his factual allegations are wholly unsupported, thus he has not presented cognizable claims. Id. at 12

3

3) The Privacy Act's remedial safeguards preclude separate <u>Bivens</u> liability; therefore, Plaintiff's allegations that his inmate file contains inaccuracies is not a cognizable <u>Bivens</u> claim. <u>Id.</u> at 15 – 18.

4) Even if Plaintiff had properly classified his allegations regarding inaccuracies in his inmate file as a Privacy Act violation, he has not pled a cognizable Privacy Act claim, because the only proper defendant in a Privacy Act lawsuit is the agency that maintains the allegedly mishandled records. <u>Id.</u> at 18 – 19.

5) Further, the Privacy Act requires that an aggrieved party establish that he has suffered some tangible economic loss, which Plaintiff has not done; therefore, even if Plaintiff had properly filed a Privacy Act lawsuit against the Bureau of Prisons ("BOP"), he has not pled a cognizable Privacy Act claim. <u>Id.</u> at 19 – 20.

5) Plaintiff has not established that the Defendants discriminated against him. <u>Id.</u> at 20 – 21.

6) Plaintiff has not stated a viable retaliation claim. <u>Id.</u> at 21 – 23.

7) Plaintiff has not presented any viable constitutional claims; therefore, the Defendants are entitled to qualified immunity. <u>Id.</u> at 23 - 24.

The Defendants also attach affidavits from Howard Williams, Legal Assistant and Administrative Remedy Clerk at the BOP's Mid-Atlantic Regional Office ("Williams Decl."); from Defendant Angela Gyorko, Case Manager at FCC Hazelton ("Gyorko Decl."); from Defendant Lori Smith, Unit Manager at FCC Hazelton ("Smith Decl."); from Defendant James Dunn, Associate Warden at FCC Hazelton ("Dunn Decl."); and from Defendant James Fahey, Case Manager at FCC Hazelton ("Fahey Decl."), in support of its arguments. <u>See</u> ECF Nos. 35-1, 35-2, 35-3, 35-4, & 35-5.

### C. **Plaintiff's Response in Opposition, styled as Motion for Summary Judgement**

Plaintiff reiterates his arguments without addressing the Defendants' arguments on the same. He requests that the Court grant summary judgment in his favor. ECF No. 39 at 1. He attaches a copy of an Inmate Request to Staff [ECF No. 39-1 at 1]; a copy of a Department of Justice ("DOJ") Inmate Skills Development Plan [ECF No. 39-1 at 2]; and a copy of his BOP Sentence Monitoring Computation Data [ECF No. 39-1 at 3 -5], arguing that these documents

prove his claims. ECF No. 39 at 3. His response makes no mention of the Defendants' arguments regarding his failure to administratively exhaust his claims before filing suit, nor does he address the Defendants' argument regarding the Privacy Act.

### III. Standard of Review

**A. Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a case when a complaint fails to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) is inappropriate unless it appears beyond doubt that the plaintiff cannot prove any set of facts to support his or her allegations. Revene v. Charles County Comm'rs., 882 F.2d 870 (4th Cir. 1989). Courts, however, are not required to accept conclusory allegations couched as facts and nothing more when ruling on a motion to dismiss pursuant to 12(b)(6). A complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint that is based on cognizant legal authority and includes more than conclusory or speculative factual allegations. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id.; see also Nemet Chevrolet, Ltd. v. Comsumeraffairs.com, Inc., 591 F.3d 250 (4th Cir. 2009). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." Id.

Whether a complaint is legally sufficient is measured by whether it meets the standards for a pleading stated in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 (providing general rules of pleading), Fed. R. Civ. P. 9 (providing rules for pleading special matters), Fed. R. Civ. P. 10 (specifying pleading form), Fed. R. Civ. P. 11 (requiring the signing of a pleading and stating its significance) and Fed. R. Civ. P. 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted). See Francis v. Giacomelli, 588 F.3d 186 (4th Cir. 2009).

Plaintiff is proceeding *pro se* and therefore the Court is required to liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); Haines v. Kerner, 404 U.S. 519 (1972) (per curiam); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, Haines, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Id. at 520-21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). However, a court may not construct the plaintiff's legal arguments for her. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985). Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30 (1st Cir. 2001)(cited with approval in Witthohn v. Federal Ins. Co., 164 Fed. Appx. 395 (4th Cir. 2006) (unpublished)). There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint. Specifically, a court may consider official public records, "documents incorporated

6

into the complaint by reference, and matters of which the court may take judicial notice," or sources "whose accuracy cannot reasonably be questioned." Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462 (4th Cir. 2011).

However, when, as here, a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B. Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial.

7

Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

### III. Analysis

**A. Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[3] and is required even when the relief sought is not available. Booth, at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to filing a complaint in federal court.* See Porter, at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 84 - 85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons;" (2) to

---

[3] Porter, 534 U.S. at 524.

"afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case;" and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires full and proper exhaustion." Woodford, at 92-94 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 101 - 102.

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). See 28 C.F.R. § 542.10, *et seq.* If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response.[4] An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, 986 F.Supp. 941, 943 (D. Md. 1997).

In Jones v. Bock, 549 U.S. 199 (2007), the United States Supreme Court ruled, among other things, that an inmate's failure to exhaust under the PLRA is an affirmative defense, and an inmate is not required to specifically plead or demonstrate exhaustion in his complaint. Nonetheless, pursuant to the Court's authority under 28 U.S.C. § 1915, it not foreclosed from

---

[4] "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CMM. within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days . . . If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

dismissing a case *sua sponte* on exhaustion grounds, if the failure to exhaust is apparent from the face of the complaint. See Anderson v. XYZ Corr. Health Servs., 407 F.3d 674, 681 – 82 (4th Cir. Va. 2005).

Under §1997e(a), the exhaustion requirement depends on the "availab[ility]" of administrative remedies: An inmate must exhaust available remedies, but need not exhaust unavailable ones." Ross v. Blake, 136 S. Ct. 1850, 1858 (2016). For example, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use, such as when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Ross, 136 S. Ct. at 1859. Or, a remedy might be rendered unavailable because prison administrators thwart inmates from taking advantage of it "through machination, misrepresentation, or intimidation." Ross, 136 S. Ct. at 1860.

Finally, where exhaustion is not apparent from an inmate's pleading, "a complaint may be dismissed on exhaustion grounds so long as the inmate is first given an opportunity to address the issue." Custis v. Davis, 2017 U.S. App. LEXIS 5147 (4th Cir. 2017)(quoting Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Here, Plaintiff's complaint, filed without a memorandum in support, asserts that he filed a BP-8, a BP-9, and a BP-10. ECF No. 1 at 5. Elsewhere, he contends that he sought relief through the grievance process, "BP-8 thru BP-11[,] [but] [t]hat the BOP claims once again that I have pending charges but the defendant(s) have failed to produce the charges and/or what jurisdiction they are filed in. Failed to remove non-existent detainer." ECF No. 1 at 6. He directs the court to his "attached administrative remedies presented to [the] BOP and their response to the non-existent detainer culminating into false and misrepresented information in my files to cause me an injury and violation of due process and having an adverse affect [sic] in

10

my custody classification and programming opportunities." Id. He attaches a copy of a June 3, 2016 BOP Informal Resolution Form, which identifies his specific complaint as:

> I have repeatedly [sic] asked Ms. Gyorko to remove a detainer on me that does not exist[.] She has refused. And refuses to look into it[.] If she did she would see as does records [that] I have no detainer.
> Relief requested: Remove the detainer. *signed Leroy Townsend 6/3/16*.
> Referred to: Unit Manager. No relief granted.  Comments: You are scored correctly. Your PSI shows unresolved charges which are scored as detainers for 18 months or [until] a disposition is reported to the records department. Staff signature: *J. ___ [illegible]* 6/9/16.

ECF No. 1-1 at 5.  Next, Plaintiff attaches a copy of a June 10, 2016 Request for Administrative Remedy, which states:

> **Part A:** Inmate Request: In re[illegible] to my unsolved charges please provide the charging jurisdiction and case # so that I may file a [sic] IAD[5] to spur the detainer clock on said incident.  *signed Leroy Townsend.*
> **Part B** – Warden response *[this section is blank, other than the]* Case No.: 867312-F1.

ECF No. 1-1 at 4.  Next, Plaintiff attaches a copy of a July 1, 2016 Request for Administrative Remedy, which states:

> Administrative Remedy # 867312-F1.
>
> You have filed a Request for Administrative Remedy in which you request to be provided with the charging jurisdiction and case number regarding your pending charges to allow you to file an IAD (Interstate Agreement on Detainers) to have the charge resolved.
>
> A review of this matter revealed the Administrative Remedy process was designed for an inmate to identify a specific complaint to allow staff the opportunity to resolve the situation at the lowest possible level.  You did not file a complaint, you have simply requested information.  The information you are requesting can be obtained from your assigned Unit Team on an inmate request to staff member form (cop out).
>
> This response is for informational purposes only.

---

[5] An "IAD" refers to the Interstate Agreement on Detainers Act, Pub. L. No. 91-538, 84 Stat. 1397 (1970), of which Article III of the Agreement permits a prisoner to initiate final disposition of any untried indictment, information, or complaint against him/her in another State on the basis of which a detainer has been lodged against him/her.

> If dissatisfied with this response, you may appeal to the Mid- Atlantic Regional Director, Federal Bureau of Prisons, 302 Sentinel Drive, Suite 200, Annapolis Junction, Maryland 20701. Your appeal must be received in the Regional Office within 20 days of the date of this response. *signed* <u>David R. Wilson, Acting FCI Warden</u>, <u>Jul 26, 2016</u>.

ECF No. 1-1 at 6. Plaintiff also attaches a copy of a July 7, 2016 Regional Administrative

Remedy Appeal, which states:

> **Part A:** Reason for Appeal: No one here at FCI Hazelton can answer me as to the (charging jurisdiction or Case No) as to a detainer they say I have. Depriving me of one of the ability to file a[n] IAD and increasing my custody level score. Despite the fact they cannot find their charges they refuse to remove said detainer. Despite what the (B[P-]9) is saying[,] how many ways are there to ask a simple question[][?] 1. Can I have the said detainer info and if not[,] why am I burdened with it? *Signed* <u>Leroy Townsend</u>.
> **Part B,** Regional Director's response: *[blank, except for the]* Case No.: 867312-R1.

ECF No. 1-1 at 3. Next, Plaintiff attaches a Regional Administrative Remedy Appeal, Part B –

Response, which states:

> Date filed: July 14, 2016. Remedy ID No. 867312-R1.
>
> You appeal the Warden's response to your administrative remedy. You claim your Unit Team will not remove a detainer scored on your Custody Classification Form, despite not being able to find the detainer. You request staff to provide you information about the detainer or remove it from your Custody Classification Form.
>
> A review of your case indicates you have a pending charge. You do not currently have a detainer. Program Statement 5100.08, Inmate Security Designation and Custody Classification indicate, pending charges will be scored as detainers on the Custody Classification Form until the second regularly scheduled custody review. Only formally filed detainers are considered on the Custody Classification Form after the second regularly scheduled custody review.
>
> This response is for informational purposes only. If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons, 320 First :street, N.W., Washington, D.C. 20534. Your appeal must be received in the General Counsel's Office within 30 days from the date of this response. Signed J.F. Caraway, Regional Director, Mid-Atlantic Region, 7/26/16.

ECF No. 1-1 at 7.

Attached to his response in opposition to the Defendants' dispositive motion, Plaintiff also provided a copy of an undated, unsigned "Inmate Request to Staff." There is no administrative grievance number on it. In the "to" box, someone hand-wrote "Townsend," but then crossed it out and re-wrote "Townsend" in the "from" box, along with Townsend's inmate number and unit "N4." It states as follows: "Subject: *[this entire area is left blank]*. Disposition: *[typewritten]:* 'BANK ROBBERY US DIST Ct. Dkt. 08-0032-01 10/14/14 Probation Warrant issued 2/15/1991. Aggravated Assault. Phil PD. (No record of disposition).' *[Handwritten next to this typed notation, someone wrote]:* 'This is what is being scored on your points. Points attached.'" ECF No. 39-1 at 1. The place for staff signature and date is left blank. Plaintiff's response in opposition to Defendants' dispositive motion contends that this document, when compared with its also-attached "Inmate Skills Development Plan, Current Program Review: 09-27-2016," which states "Pending Charges: **None Known**" [see ECF No. 39-1 at 2 (emphasis added)] "conclusively prove the 'fraud' and 'false statements' that continue to be perpetrated against me." ECF No. 39 at 1. The undersigned presumes that by this, Plaintiff is pointing out the contradictory statements contained in the two documents. Plaintiff provides further argument regarding his claims, but provides no rebuttal to Defendants' arguments regarding his failure to exhaust. See Id. at 3.

Defendants assert that Plaintiff filed nineteen BOP administrative grievances since being incarcerated with the BOP.[6] ECF No. 35 at 10; see also Williams Decl., ECF No. 35-1, ¶ 14 at 5. Ten of those were filed at other facilities before his arrival at FCI Hazelton. ECF No. 35 at 10; see also Williams Decl., ECF No. 35-1, ¶ 15 - 17 at 5. After his August 10, 2015 arrival at FCI

---

[6] The Public Information Inmate Data sheet attached to Defendants' response indicates that Plaintiff was committed to the BOP to serve his current sentence on August 10, 2015. See ECF No. 35-1 at 11. See also Williams Decl., ECF No. 35-1, ¶ 11 at 3.

Hazelton, Plaintiff filed six grievances regarding prison employment, staff misconduct, and disciplinary sanctions. ECF No. 35 at 10; see also Williams Decl., ECF No. 35-1, ¶¶ 18 - 21 at 5 - 6.  None of those six grievances are related to this lawsuit.  ECF No. 35 at 10. Specifically, Defendants assert that Plaintiff never even attempted to administratively exhaust his instant Bivens claims of: racial discrimination or retaliation [ECF No. 35 at 10; see also Williams Decl., ECF No. 35-1, ¶ 24 at 6]; that his educational, vocational, and/or transfer opportunities were limited [ECF No. 35 at 10; see also Williams Decl., ECF No. 35-1, ¶ 25 at 6]; or that he was precluded from participating in the Life Connections Program. ECF No. 35 at 10 – 11; see also Williams Decl., ECF No. 35-1, ¶ 23 at 6.

Defendants aver that Plaintiff did file three grievances at FCI Hazelton requesting information related to unresolved criminal charges and his security classification; those grievances are # 867312-F1, # 867312-R1, and # 867312-A1. See Williams Decl., ECF No. 35-1, ¶ 26 at 6 – 7.  However, Defendants contend, and a careful review of the record[7] supports Defendants' position that Plaintiff never completed the exhaustion process for this claim. ECF No. 35 at 11.

On June 28, 2016, Plaintiff filed grievance # 867312-F1 at FCI Hazelton, requesting information regarding his unresolved criminal charges and security classification. See Williams Decl., ECF No. 35-1, ¶ 27 at 7; see also Full Screen Format, ECF No. 35-1 at 45. That grievance was closed on July 1, 2016. See Williams Decl., ECF No. 35-1, ¶ 27 at 7; see also Full Screen Format, ECF No. 35-1 at 45.

---

[7] Specifically, attached to their memorandum in support of their dispositive motion, the Defendants include the sworn Declaration of Howard Williams, the BOP's Mid-Atlantic Legal Assistant and Administrative Remedy Clerk; a copy of electronic Plaintiff's Administrative Remedy Generalized Retrieval, and the copies of the Full Screen Format(s) for the Administrative Remedy Generalized Retrieval.

Plaintiff appealed this request by submitting grievance # 867312-R1 to the BOP Mid-Atlantic Regional Office on July 14, 2016. See Williams Decl., ECF No. 35-1, at ¶ 28 at 7; see also Full Screen Format, ECF No. 35-1 at 48. This appeal was closed at the BOP Mid-Atlantic Regional Office on July 26, 2016. See Williams Decl., ECF No. 35-1, at ¶ 28 at 7; see also Full Screen Format, ECF No. 35-1 at 48.

On August 9, 2016, Plaintiff appealed his request again, by submitting grievance # 867312-A1 to BOP General Counsel. See Williams Decl., ECF No. 35-1, ¶ 29 at 7; see also Full Screen Format, ECF No. 35-1 at 51. On August 17, 2016, BOP General Counsel rejected Plaintiff's appeal because he had failed to provide copies of the original institutional grievance, the Warden's response, the regional appeal, or the Regional Director's response. See Williams Decl., ECF No. 35-1, ¶ 29 at 7; see also Full Screen Format, ECF No. 35-1 at 51. The BOP General Counsel expressly directed Plaintiff to resubmit his appeal within fifteen days after the rejection. Id. Nonetheless, instead of correcting his error and resubmitting his rejected appeal, Plaintiff disregarded the instruction and did not resubmit. See Williams Decl., ECF No. 35-1, ¶ 30 at 7 - 8.; see also Full Screen Format, ECF No. 35-1 at 51.

Accordingly, despite the complaint's assertion to the contrary, it is apparent from a thorough review of the record that Plaintiff did not fully exhaust his grievances before filing suit, because he did not complete the exhaustion process for the only claim in this Bivens action that he even attempted to exhaust. Further, Plaintiff's response to Defendants' dispositive motion conspicuously fail to address the fact that he never filed any grievance at all regarding his allegations of racial discrimination, retaliation, his limited educational, vocational, and/or transfer opportunities, or his claim that he was precluded from participating in the Life Connections Program. Moreover, he makes no mention that his claim regarding his unresolved

criminal charges and his security classification was rejected and never fully exhausted for his failure to comply with the response's instructions on how to correct the rejection.

The undersigned acknowledges that despite the fact that the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements," Booth, 532 U.S. at 741, n.6, several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Ziemba v. Wezner, 366 F.3d 161, 163 (2nd Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense when defendant's actions render grievance procedure unavailable); Mitchell v. Horn, 318 F.3d 523, 529 (3rd Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (remedy not available within meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Aceves v. Swanson, 75 F. App'x 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request). Indeed, the Fourth Circuit has held that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d at 725.

Furthermore, a number of courts of appeals have held that prison officials' threats of violence can render administrative remedies unavailable. See, e.g., Turner v. Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008); Kaba v. Stepp, 458 F.3d 678, 686 (7th Cir. 2006); Hemphill v. New York, 380 F.3d 680, 688 (2nd Cir. 2004). But see Larkin v. Galloway, 266 F.3d 718, 723-24 (7th Cir. 2001) (failure to exhaust not excused because plaintiff was afraid of retaliation). For threats or intimidation to render administrative remedies unavailable, they must typically be substantial and serious enough that they would deter a similarly situated prisoner of ordinary

16

fitness from pursuing administrative remedies. See Turner, 541 F.3d at 1085; Kaba, 458 F.3d at 684-86; Hemphill, 380 F.3d at 688.

The sworn declarations of the each of the Defendants and non-party Howard Williams, the BOP's Legal Assistant and Administrative Remedy Clerk for the BOP's Mid-Atlantic Regional Office, as well as the Administrative Remedy Generalized Retrieval Sanitized Format, all contradict Plaintiff's unsupported allegations.  The Plaintiff has not provided the Court with anything to refute these sworn declarations.  Generally unsworn statements without more are not admissible on summary judgment to contradict sworn affidavits. Edens v. Kennedy, 112 Fed. Appx. 870, 877 (4th Cir. 2004) citing Scott v. Edinburg, 346 F.3d 752, 759 (7th Cir. 2003) and Provident Life & Accident Ins. Co. v. Goel, 274 F.3d 984, 1000 (5th Cir. 2001). Further, it is apparent from a careful review of the record that by the time he arrived at FCI Hazelton on August 10, 2015 [see ECF No. 35-1, ¶ 11 at 3], Plaintiff was already well-acquainted with the grievance process' requirement of full exhaustion at each level before proceeding to the next, having filed ten grievances at other federal facilities during previous incarcerations, prior to his arrival at FCI Hazelton.  See Williams Decl., ECF No. 35-1, ¶¶ 15 – 17 at 5.  Moreover, while Plaintiff apparently had no difficulty in producing copies of the grievances he filed on June 3, 2016, June 10, 2016, the July 1, 2016 response, his July 7, 2016 Regional Administrative Remedy Appeal, and the response thereto,  it is noteworthy that Plaintiff did not produce any copy of the BOP General Counsel's August 17, 2016 rejection of his appeal for his failure to attach copies of the original institutional grievance, the Warden's response, the regional appeal, and/or the Regional Director's response.

Accordingly, the undersigned finds Plaintiff's bare allegation that he exhausted his administrative remedies lacks credibility, compared with the Defendants' sworn declarations on the point, and the copies of the Administrative Remedy Generalized Retrieval, and the copies of their Full Screen Format(s) Defendants attached to their response. Plaintiff has not asserted that the administrative grievance was unavailable to him; further, he has not attempted to explain why he failed to administratively exhaust his claims. He makes no claim that Defendant or any other prison official ever threatened him with violence to discourage him from filing grievances.

Accordingly, consistent with <u>Custis v. Davis</u>, Plaintiff has had the opportunity to address the issue and the undersigned still finds that his failure to exhaust cannot be excused, and this matter must be dismissed for failure to exhaust administrative remedies. Normally, such a dismissal would be without prejudice. However, here, because so much time has elapsed, Plaintiff cannot now complete the exhaustion process under the BOP's administrative remedy procedure;[8] therefore, his claims should be dismissed with prejudice. <u>See</u> 28 C.F.R. § 542.10, *et seq*.

## V. Recommendation

For the reasons stated above, the undersigned hereby recommends that Defendants' Motion to Dismiss or, Alternatively, Motion for Summary Judgment [ECF No. 34] be **GRANTED** and Plaintiff's complaint [ECF No. 1] be **DENIED and DISMISSED with prejudice.**

---

[8] The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden (BP-9**), within 20 calendar days of the date of the occurrence on which the complaint is based**. <u>See</u> 28 C.F.R. § 542.10, *et <u>seq.</u>* (emphasis added).

Further, the undersigned recommends that Plaintiff's pending "Motion for Summary Judgment" [ECF No. 39] contained within his response in opposition to the Defendants' dispositive motion be **DENIED as moot.**

**Within fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is further directed to send a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to transmit a copy electronically to all counsel of record.

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

DATED: January 16, 2018

/s/ *Michael J. Aloi*
MICHAEL J. ALOI
UNITED STATES MAGISTRATE JUDGE